## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

EDWARD FAYE PARKS,              )
                               )
                   Plaintiff,  )
                               )
v.                             )          Case No. CIV-09-406-HE
                               )
DR. HOLY, and PHYSICIAN'S NETWORK  )
ASSOCIATION,                   )
                               )
                   Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff, Edward Faye Parks, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a civil rights action pursuant to 42 U.S.C. § 1983 seeking damages for an alleged constitutional violation. The United States District Court for the District of Arizona transferred the case to this court based on improper venue. *See* Order of April 9, 2009, Case No. CV 09-126-TUC-RCC.[1] The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Five motions are currently pending. An initial review of the Complaint [Doc. #1] has been conducted pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B) (pertaining to *in forma pauperis* proceedings).[2] It is

---

[1]The Order is attached to Plaintiff's Complaint.

[2]28 U.S.C. § 1915A(a) and (b) state:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

(continued...)

recommended that the claims against Defendants Holy and Physician's Network Association be dismissed *sua sponte* for failure to state a claim upon which relief may be granted.  It is further recommended that Plaintiff's pending motions be denied.  Finally, it is recommended that Plaintiff be given the opportunity to amend his complaint to name a proper defendant with regard to his claim in Count III.

I.     **Pending Motions**

       A.     **Motions for Transfer**

       In two of his pending motions, Plaintiff seeks a transfer from the Great Plains Correctional Facility (GPCF) in Hinton, Oklahoma, to a correctional facility in Arizona.

       In his "Motion to Enter Medical" [Doc. #9], Plaintiff states that a sore on his head is opening.  He states that the sore developed shortly after a C-T scan was performed on July 9, 2008.  He states that he has been to the medical unit at GPCF three times to submit blood for analysis, but each time the doctor was not at the medical unit, and no one else in the medical unit was trained to draw blood.  Plaintiff further states that the results of the C-T scan were negative, but only because of the incompetence of the operator.  Plaintiff asks this Court to

---

[2](...continued)
        complaint-(1) is frivolous, malicious, or fails to state a claim upon which
        relief may be granted; or (2) seeks monetary relief from a defendant who is
        immune from such relief.

28 U.S.C. § 1915(e)(2)(B) provides:

        Notwithstanding any filing fee, or any portion thereof, that may have been
        paid, the court shall dismiss the case at any time if the court determines that
        – . . . the action or appeal – (i) is frivolous or malicious;(ii) fails to state a
        claim on which relief may be granted; or (iii) seeks monetary relief against
        a defendant who is immune from such relief.

"provide a transfer back so this medical head injury can be properly handled by Arizona State medical staff."  Motion to Enter Medical at 2.

In his "Motion for Transfer Hearing" [Doc. #13], Plaintiff again requests a transfer "back to Arizona."  In support of his Motion, Plaintiff states that he had tried to get a blood test for two weeks, that the medical staff was short of help, and that two counselors had been fired and a third demoted.

"'As a general matter, a state prisoner has no federal constitutional right to serve his sentence in any particular place of confinement and has no federal constitutional basis upon which to object to a simple administrative transfer from one facility to another, even if the transferee facility is located in another state.'"  *Reed v. Hargett*, No. 99-6371, 2000 WL 990944, 1 (10th Cir. Jul. 19, 2000) (*quoting Lambert v. Sullivan*, 35 F. Supp.2d 1131, 1133 (E.D. Wis. 1999)).  Because they are "ill equipped to deal with the increasingly urgent problems of prison administration," *Turner v. Safley*, 482 U.S. 78, 84 (1987) (internal citation and quotation omitted), courts are hesitant to interfere with decisions of prison authorities. It is therefore recommended that Plaintiff's motions seeking a transfer from GPCF to a facility in Arizona be denied.

**B.      Motion for Early Release**

In the alternative to a transfer, Plaintiff asks this court to vacate the remainder of his sentence and release him. [Doc. #11].  Release from prison is not, however, a remedy available in a civil rights action.  *See Boutwell v. Keating*, 399 F.3d 1203, 1209 (10th Cir. 2005) ("A prisoner may use § 1983 to challenge the conditions of his confinement, but

habeas corpus is the only avenue for a challenge to the fact or duration of confinement, at least when the remedy requested would result in the prisoner's immediate or speedier release from that confinement."); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) ("A habeas corpus proceeding 'attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.  In contrast, a civil rights action . . . attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions.'" (*quoting Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir.1993) (citation omitted))).  It is recommended that Plaintiff's motion seeking early release be denied.

### C.    <u>Motion for Consideration of Monthly Fees</u>

Plaintiff's Motion for Consideration of Monthly Fees [Doc. #16] also seeks an order from this Court authorizing Plaintiff's immediate release based on his medical condition – a remedy unavailable in this civil rights action.  Additionally, Plaintiff seeks "consideration" regarding the filing fee he must pay every month toward the $350 filing fee for this case.[3] By Order dated May 26, 2009, this Court granted Plaintiff's Motion to Proceed *In Forma Pauperis* and required Plaintiff to pay an initial partial payment in the amount of $12.67. This amount was calculated as provided in 28 U.S.C. § 1915(b).[4]  The Order further stated that Plaintiff would be required to make monthly payments equal to 20 percent of the

---

[3]Plaintiff states that he has three federal cases pending and that most of the money he receives every month goes to paying the filing fees.

[4]Plaintiff was given the option to voluntarily dismiss this action by June 15, 2009, without incurring any fees or costs.  He chose not to dismiss his case.

preceding month's income credited to his prison accounts until the total filing fee is paid, as required by 28 U.S.C. § 1915(b)(2).

Plaintiff paid his initial partial filing fee on August 12, 2009, and this Court entered an order directing GPCF to collect monthly payments from Plaintiff's prisoner account when the account exceeds $10.00 and forward them to the Clerk of this Court until the filing fee is paid in full. Prisoners who proceed with their civil rights actions *in forma pauperis* are responsible for paying their filing fees. Plaintiff's Motion for relief from that responsibility should be denied.

### D.    Motion to Enter Evidence

In Plaintiff's Motion to Enter Evidence [Doc. #12], Plaintiff contends that he has been charged twice by two different telephone companies for long distance calls made from GPCF. Plaintiff does not state what relief he is seeking. Moreover, this "motion" is unrelated to the medical claims in the Complaint, and it does not raise a constitutional issue. It is therefore recommended that the Motion to Enter Evidence be denied.

## II.    Plaintiff's Claims Asserted in His Civil Rights Complaint

Plaintiff states in his Civil Rights Complaint that he suffers from chronic obstructive pulmonary disease and a head injury. He challenges the medical care he has received since his transfer to GPCF from a prison in Arizona. His claims are liberally construed as arising under the protections of the Eighth Amendment to the U.S. Constitution prohibiting cruel and unusual punishment.

Plaintiff seeks immediate release[5] and $500,000 in damages for "long term medical [expenses]." Complaint at 6.

## III.   Grounds for *Sua Sponte* Dismissal

In determining whether dismissal of a complaint is proper for failure to state a claim upon which relief may be granted, the Court must take all well-pleaded factual allegations as true and view those facts in the light most favorable to the plaintiff. Dismissal is proper if, taking those facts as true, the plaintiff fails to present a plausible right to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-1248 (10th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (*quoting Twombly*, 550 U.S. at 556). In a civil rights complaint, "bare assertions" consisting of "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," however, "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (2009) (*citing Twombly*, 550 U.S. at 554-555). Rejection of "bald allegations" of constitutional violations is not based "on the ground that they are unrealistic or nonsensical." *Id.* Rather, it is the conclusory nature of the allegations, even those that are not "extravagantly fanciful [in] nature," that "disentitle [them] to the presumption of truth." *Id.* Where, as here, the litigant appears *pro se*, the Court construes the complaint liberally. *Haines v. Kerner*, 404 U.S. 519 (1972).

---

[5]As discussed above, an inmate seeking speedier or immediate release from imprisonment is seeking habeas relief.

IV.     **Analysis of Claims**

Plaintiff's claims, liberally construed, allege that Defendants (Dr. Holy and Physician's Network Association) have failed to address his medical needs.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (*citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Ramos v. Lamm*, 639 F.2d 559, 566 (10th Cir. 1980)). A "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

> This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.* at 104-05.

"'Deliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825 at 834 (quotation omitted). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quotation omitted).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quotation omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted).

## A.   Counts I and II

In Count I, Plaintiff states that on February 25, 2009, he had a medical appointment for sore spots, headache pain, and difficulty breathing. He states that he asked Defendant Holy if the sore spots on his arms and chest could be caused by Neproxen, a medication that had been prescribed for him. According to Plaintiff, Defendant Holy stated that the sore spots were caused by the water and that his headaches were caused by high blood pressure. At some point thereafter, Plaintiff states that he saw a televised medical report warning that Neproxen sometimes causes respiratory problems and heart attacks. Plaintiff believes that his headache pain was being caused by the Neproxen and that he did not need the blood pressure medication prescribed by Defendant Holy for his headaches. Complaint at 3.

In Count II, Plaintiff alleges that Defendant Holy told him to return in two weeks after the February 25, 2009, medical appointment. Plaintiff's name never appeared on the medical list, however, and he did not have a followup appointment. Meanwhile, Plaintiff states, he

stopped taking Neproxen on his own volition, and his symptoms improved.[6]  Plaintiff states

that "a medical doctor should pay attention to medical reports available to the public and not

allow inmates to take medication [that causes] respiration [problems] and heart attacks."

Complaint at 4.

Plaintiff does not state that he suffered any injury from Dr. Holy's having prescribed

blood pressure medication.  Although Plaintiff states that Neproxen is "not good" for his

chronic obstructive pulmonary disease, he does not allege that his respiratory problems

worsened because of the Neproxen.  Indeed, Plaintiff's Complaint focuses on damage that

could have happened, but did not.  Moreover, Plaintiff has not stated that Dr. Holy had the

requisite state of mind to satisfy the subjective prong of the test for deliberate indifference.

At most, Plaintiff has stated a claim for negligence against Dr. Holy.  "[A] negligent or

inadvertent failure to provide medical care is not actionable in a § 1983 lawsuit." *Martinez

v. Garden* , 430 F.3d 1302, 1305 (10th Cir. 2005) (*citing Ramos v. Lamm*, 639 F.2d at 575).

Plaintiff's contention that he was not automatically scheduled for a followup

appointment two weeks after his initial appointment does not rise to the level of an Eighth

Amendment claim.  There is nothing in Plaintiff's recitation of the facts to suggest that either

named Defendant was responsible for failing to secure a medical appointment for him or that

he tried to get a medical appointment for himself.  The remaining allegations in Count II state

no more than a claim based on negligence.

---

[6]Plaintiff admits, however, that he also received a steroid shot during the February visit to Dr. Holy.  Complaint at 7.

It is recommended that the claims in Counts I and II be dismissed *sua sponte* for failure to state a claim upon which relief may be granted.

**B.     Count III**

In Count III, Plaintiff states that Dr. Petry ordered four breathing treatments which a nurse, who is neither named as a defendant in this action nor identified, refused to administer. According to Plaintiff, the nurse stated that he could not have a breathing treatment unless he was wheezing or on his hands and knees.  Without the breathing treatments, Plaintiff contends, his shortness of breath has worsened, making it hard for him to walk to his meals. He also states that the lack of oxygen could cause a heart attack.  Complaint at 5.

Plaintiff indicates that he does not know the name of the nurse who refused to administer breathing treatments, but he states that the nurse is employed by Defendant Physician's Network Association.  Complaint at 5.

"In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F. 3d 1210, 1227 (10th Cir. 2006) (*citing Olson v. Stotts*, 9 F.3d 1475, 1477 (10th  Cir. 1993) (affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"); *Coleman v. Turpen*, 697 F.2d 1341, 1346 n. 7 (10th Cir. 1982) (noting defendants cannot be liable under § 1983 unless personally involved in the deprivation).

Plaintiff does not allege that either of the named defendants was personally involved with or responsible for depriving him of the prescribed breathing treatments.  If the nurse is,

in fact, an employee of Defendant Physician's Network Association, that relationship alone is insufficient for liability under § 1983.  *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (supervisory relationship alone is insufficient for liability).

As discussed above, however, "intentionally interfering with the treatment once prescribed" can constitute deliberate indifference.  *Estelle*, 429 U.S. at 105.  Plaintiff's claim in Count III is liberally construed as one based on the intentional interference with prescribed treatment.  It is therefore recommended that Plaintiff be given the opportunity to amend his complaint to name the unidentified nurse as a Defendant.

## RECOMMENDATION

It is recommended that the claims against Defendants Holy and Physician's Network Association be dismissed without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. §1915(e)(2)(B)(ii).  It is further recommended that Plaintiff's pending motions [Doc. ##9, 11, 12, 13, and 16] be denied.  Finally, it is recommended that Plaintiff be given the opportunity to amend his Complaint by naming and identifying a proper defendant with regard to his allegations in Count III.

## NOTICE OF RIGHT TO OBJECT

Plaintiff is advised of his right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by September __14th__, 2009.  *See* LCvR72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of

the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   25th   day of August, 2009.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE